which is 20-21-2105 Valdez v. Governor Grisham. Mr. Dunn, you may proceed. Good morning. Judges, may it please the court. I'd first like to start by thanking the court for ordering up this beautiful snow for our first in-person arguments back. This is quite wonderful. Welcome to Colorado. Well, I wish we could get more of it in Albuquerque, but we haven't. As I said, may it please the court, I think that one of the first things I'd like to address, and I think this is where the argument will go today, is the likelihood of success on the merits as this is an injunction appeal on a denial of a preliminary injunction case. And the court's order denying the injunction pending appeal was very helpful. It identified two things that I think really need to be fleshed out and discussed today that I will admit didn't appear in our briefing as well as they should have. And that is, of course, why this court was wrong in the Guttman v. Kulsa case. And looking at that a little bit more closely, this court relies upon the Collin v. and I'm going to get this, Gabbert case from 1999, and it applies that with Collin v. Texas in 1912. What this court did not do in Guttman in 2012 is look at the Truax case from the U.S. Supreme Court, and that was in 1915. I think that that's where the court went awry, and that's ultimately why we've argued in our briefing that the better case for this court to look at is not the one that I believe is wrongly decided in Guttman, but it's the Third Circuit decision from I believe it's 1994, and that's the Pynik case. And the Third Circuit does recognize in that case a fundamental liberty interest as recognized in Truax for a property interest in a chosen profession. And so that I think is a big, big issue to address right off the bat. I believe that the Supreme Court, in applying some Truax, as this court had in the Guttman case, would have arrived at the decision that the ability to choose to engage one's chosen profession is a fundamental liberty. Although Nurse Blackford isn't completely denied the ability to practice as a nurse, is she? What do we do about that? I mean, she can't work at Presbyterian because of the mandate, other congregate care, but she's not completely excluded from the nursing profession. Well, she is if she doesn't get a vaccination. There are non-congregate care health care facilities where she can work, correct? If they're complying with the order, and this is why this is important, if they're complying with the order from the governor's office or from the Department of Health rather, then no, nowhere in New Mexico can a nurse who is unvaccinated who doesn't meet one of the exemptions engage in the profession of nursing. That's the crux of it. How about home health care? Again, it says any employer, right? This is directed at employers. You're not going to meet one of the exemptions or you're vaccinated. That's the issue. So, of course you can, but it would be illegal. It applies to congregate care facilities, right? It applies to congregate care facilities. That would be every health care provider that employs a nurse? The state's order makes no differentiation of the type of care. It just says if it's this care. If you're providing nursing at home, you're still subject to this order and you would be violating the order if you don't have an exemption or a vaccination. And that's the problem. It's not narrowly tailored and that's exactly why heightened scrutiny should have been applied in this situation. Because it is a fundamental interest. And this court was wrong in government, but this is the opportunity to fix that. Well, Jacobson's applies what looks like a rational basis test. Does she lose under Jacobson? Unless we can figure out a way to distinguish it. Well, I think that's the second point I was going to touch on is the bodily integrity argument and of course the Supreme Court's decision in Planned Parenthood v. Casey and the discussion of applying Roe in that situation. And then Jacobson's actually cited in that decision. And I will admit to the court, I hadn't made that connection until the Supreme Court took up the abortion arguments again this last term that they did that. And then when you start reading through, which is what I did, I read through Planned Parenthood v. Casey and sure enough, Jacobson's in there in a section of it that seems to abrogate Jacobson and a whole other set of cases in recognizing this right to bodily integrity for women. This really isn't a bodily integrity case. I'm getting a lot of feedback, but this is a case, no one's saying she has to get vaccinated, right? They're not forcing her to be vaccinated. They are forcing her if she wants to engage in her chosen profession. So it is different. Well, if she wants to engage in the chosen profession in congregate care in this state, right? That's right. But the bodily integrity cases are like when you force medication on a mentally ill prisoner to bring them back to competency, right? I mean, you're actually forcing them to take into their body a substance they don't want. That's not this case. Well, that would depend, Your Honor, upon the definition of force. And I think you're arguing a situation where we're talking about the degree of force rather than whether or not it's force. Physical force, of course, yes. With prisoners, they're being forcibly and physically forcibly done this. But you're talking about economic force against these nurses. It's the same situation where you have a force applied to them. They are being told, do this or else. That is the epitome of force. It's a matter of degree, not a matter of whether or not it's force. Well, I don't think these cases turn on your definition of economic force. But if you can point me to one that applies a bodily integrity analysis to a decision that is influenced by economic consequences, I'll be happy to look at it. I don't know that we have to get to this definition of force. I think that when you look at Planned Parenthood versus Casey, the question right now that we're at is whether or not heightened scrutiny should apply because this is a fundamental liberty. And I shudder to think that we don't agree that fundamentally it is important to have bodily integrity. That is what's recognized in Casey and it's also recognized in Roe. It's a woman's right to choose. And yet in this situation, we've taken that same fundamental interest in deciding what goes into your body or what you do with your body. And we've applied force to force these, a lot of times, the majority of women in nursing or the majority of people in nursing are women. We're now looking at them and we're saying take this injection, which the science is not settled on, as to what it may or may not have as far as consequences for reproductive rights because there's no way that we could know that yet. So we may be damaging their reproductive health by forcing them to take a vaccination in order to keep a job that they have to have in order to survive in their chosen profession. And I think that's disruptive. Yes. With respect to Ms. Blackford's contract clause claim, so long as the hospital had its own restrictions that applied to her, doesn't she lack standing on that claim because it's not redressable by what we do with the public health order? I think that's a question of fact that I don't think the court could have reached, the district chicken and egg problem. Whether the employer was going to impair that contract absent the state's requirement that they do so in order to remain legal and compliant with government orders, I don't know that we have the answer to that question right now. I don't think the record's been developed enough to really address that. And until it's clear that the company would have done that without the government's involvement, then I think she has standing. Well, I mean, it's not a motive question. It's a question of redressability. And if the public health order were revoked today, it wouldn't make any difference unless the hospital does something. I understand Your Honor's point. Like I said, I don't know that the hospital ever impairs the contract absent the government forcing it to do that. And that's the reason that the orders are at issue right now. Well, they actually adopted things first, didn't they? No, Your Honor, they did not. In fact, the, and this is not really very well developed in the record, but in fact the hospital had been telling those nurses and health care workers that they were not going to do mandatory vaccinations up until the governor's order came out. And Ms. Blackford's declaration states that she was not under that obligation until the government made it that obligation. And she had assurances from Presbyterian that that wasn't going to be the case. So, the one last thing on this I would like to address is that why the court's order denying the injunction looks at why this was described as a Fourth Amendment claim and not... I have one other question on redressability. And if Presbyterian takes federal funding, wouldn't it fall under the federal vaccination mandate that the Supreme Court upheld recently in the Biden case? That's a very good point, Your Honor, and I believe that it would. So, if we grant you all the relief you want, she's still stuck with the mandate from the federal government? That may be the case, Your Honor. Yes. And let me ask you while we're still talking about just disability, are we all in agreement that Ms. Valdez's claim about the state fair is moot? Yes, Your Honor, I believe we've said that both times in both briefs. Okay. So, as I was saying just briefly, and I'll reserve after this, the reason we addressed it to begin with in terms of bodily integrity, we did have a bodily integrity claim in our complaint. We addressed it in terms of the Fourth Amendment that was done in a hurry because this was part of an injunction briefing and we were trying to get this done in a hurry. And so when I did that, we didn't really dive into, for instance, the Casey case or the Roe case and look at the bodily integrity issue in terms of where the Supreme Court  Well, in fact, you didn't ever argue bodily integrity, right? I mean, those words. It's in our complaint, Your Honor. We have a claim for Fourth Amendment bodily integrity in the complaint. Okay. If there's nothing further, I'll reserve the rest of my time. Thank you, Counsel. Let's hear from New Mexico. Ms. Dudley. Good morning. May it please the Court. There is no grounds for an injunction in this case. This Court has preliminarily ruled on the exact same Could you speak up a little louder, please? Sure. This Court has already preliminarily Can you hear me now? Yes. Okay. Thank you, Kevin. This Court has preliminarily ruled on the exact same issue before the District Court when it denied plaintiff's motion for an injunction pending appeal. It applied the same standard and came to the same conclusion that plaintiff has failed to demonstrate that she is likely to succeed on the merits of any of her claims. Therefore, the District Court did not abuse its discretion when it denied plaintiff's request for a preliminary injunction in September of 2021. The applicable law in this case has not changed. Jacobson is still the leading precedent, especially in the context of states' authority to require vaccines as a health measure, particularly in a public health crisis. Therefore, the public health order at issue in this case is subject to and survives rational basis review. Defendant appellees therefore request this Court dismiss this appeal due to plaintiff's inadequate standing or affirm the District Court's denial of plaintiff's request for preliminary injunction because plaintiff failed to satisfy any of the requirements for this extraordinary relief. So I'll first address standing, which was raised by Judge McHugh. As stated by this Court, Blackford no longer has standing to request a preliminary injunction because her employer has its own independent and even more expansive vaccination policy. The public health order at issue in this case only requires vaccination for workers at hospitals, workers of congregate care facilities, and employees of Office of the Governor. It does not extend to other health care facilities that are not defined within the order. Therefore, even if this public health order wasn't in place, Blackford would still be required to be vaccinated by Presbyterian. Your Honor, counsel said that that decision, that requirement by Presbyterian postdated the Governor's order. It became public. It postdated the Government's order. That's correct. It was announced after the State's order was issued. However, there is nothing in the record before the District Court that Presbyterian assured nurses beforehand that they would not have to be vaccinated. That is plaintiff's burden, and they did not present that evidence below. Did they have a requirement that they be vaccinated before the Governor's order? No, not at that time. Well, how do we know, then, that the reason for the Presbyterian contract requirement wasn't caused by the Governor's order so that if we overturn the Governor's order, that might provide the relief that the nurse seeks because Presbyterian would then revert to what its position was before the Governor's order? Is it really that speculative that granting relief from the Governor's order would not help the nurse because of the Presbyterian contract? I believe it is, and for two reasons. First, let me address the evidence that was presented to the District Court regarding the request for preliminary injunction. At that time, the State issued its order in August of 2021, and then shortly thereafter, Presbyterian issued its vaccination requirements. When introducing that vaccination policy, the CEO of that company stated that it was going to vaccinate or require all of its employees be vaccinated in order to do its part to stop the pandemic. The public health order was not discussed at all in that statement, and nor did Plaintiff provide any evidence to the District Court that went against that statement. And the Governor's order didn't include all employees. That's correct, Your Honor. Yes, that's correct. And it's not speculative that if Plaintiff was to receive a favorable decision today, her alleged injury still wouldn't be redressed because of Presbyterian's vaccination policy, which applies to all of its facilities, and also the Centers for Medicaid and Medicare regulation, which would apply if Blackford wanted to go to a different facility that wasn't being operated by Presbyterian. So, therefore, she does not have adequate standing to bring this case before this Court. Do we know that Presbyterian is covered by the federal mandate? Yes, I believe so, Your Honor. It hasn't been, there hasn't been a statement issued below in the District Court. However, I'm fairly confident that they do receive Medicare and Medicaid funding. I'm sure they do, but is it in the record? It's not in the record. Another point that I would like to address is Plaintiff's argument that Casey and Roe abrogate Jacobson v. Massachusetts, and that is simply not the case. First, as pointed out by this Court, Plaintiff did not properly preserve her argument about bodily integrity below. She only raised a broad argument about bodily integrity arising from the Fourth Amendment and did not describe how the Fourth Amendment applies in this case. Today, for the first time on appeal, Plaintiff is now stating that she is alleging a bodily integrity argument arising from the Fourteenth Amendment. This is not in her complaint, and this was not in her briefing to the District Court below. Therefore, as this Court stated in its order, denying an injunction pending appeal, Blackford forfeited this argument below. However, should the Court want to address this argument today, neither Casey nor Roe hold that there is this general, abstract concept of bodily integrity that is a fundamental constitutional right, and Plaintiff has to show there is a fundamental constitutional right in order for a higher standard of scrutiny to apply to her Fourteenth Amendment claims. However, both of these cases instead address constitutional restriction, whether there's constitutional restrictions on state regulation of abortion. So first, the Supreme Court actually cites to Jacobson favorably in both of these cases. In Casey, the large block quote that Plaintiff relies upon in her brief doesn't limit Jacobson. Instead, the Court cites to Jacobson as a part of the string citation of cases. It's demonstrating that on one hand, the Court has to balance personal autonomy and bodily integrity, and then on the other, the governmental power to mandate medical treatment. And when citing to Jacobson, the Court uses the citation signal CF. It's comparing that case to the other cases in the same area. In Roe, the Court cites to Jacobson even more favorably. It directly cites to that case that the Court has not recognized an unlimited right to do with one's body as one pleases. Finally, Roe and Casey are distinguishable from Jacobson, clearly on the type of medical treatment at issue in both cases. The medical care at issue in Roe and Casey does not implicate the public health of the entire state or of the general public. Instead, the medical treatment at issue in Jacobson and in this public health order is vaccination, which as we discussed below in the District Court, vaccination protects not just the individual, but the community at large. It's the tool that we use as a society historically to get infectious diseases under control. This is seen with rubella, with smallpox, and even more recently with polio. Therefore, Jacobson clearly applies to this case. Your Honors, if I may, it's telling that plaintiff doesn't rely on a single case involving vaccination for this argument. That's because Jacobson remains good law and courts across the country continue to rely upon its holding, which is that an individual's right to refuse a vaccine can be outweighed by the state's interest in preventing the spread of disease. Let me ask you, you say there's a, you still need to satisfy the reasonable relationship, reasonableness test, right? Yes. And I'm curious how that applies when you're talking about something scientific. So is it reasonable to require vaccination for people who have already had the disease and are immune partially, as immune, let's say the science shows that you're just as protected from the disease and from transmitting the disease if you've had the disease as if you had been vaccinated. In that circumstance, is it reasonable to require someone who can prove that he or she has had the disease to get a vaccination? Yes, Your Honor. Why is that? So the standard of rational basis review is highly deferential to the government. And regardless of the scientific data, it's reasonable to reject scientific data? So long as there is a rational basis for the government's order. That's what I wanted to pursue. This is a little different. It's not like deciding on an economic regulation that maybe will hurt consumers. Who knows exactly what's going to happen if you require licensing of certain professions, whether that's good for consumers or bad. People can differ on that. But if there's actually scientific data on something, do we still defer to the government and say it's reasonable when it's contrary to the scientific data? You may dispute the data. I was postulating some data about vaccination rates. But could you still require that, even though the scientific data shows that it makes no sense to do that? That's not the issue that we had before. But I'm trying to understand what rational basis is because that frames our discussion here. And it just seems to me there's something different here about reasonable relationship. And early in the pandemic, when nobody knows what's going on, very, very deferential. Two years out, maybe we require data, just as we required data before. Well, I won't get into our sidewalk cases, but they're median cases. But Albuquerque recently lost because it didn't have data to support its ordinance. How do you respond to that? You're saying it could be rational even though it's contrary to scientific data? I mean, in the Powers case, the court ruled that it will not strike down a law as irrational simply because it may not succeed in bringing about the result it seeks to accomplish, or because the statute's classifications lack razor-sharp precision. So long as there is a rational basis for the government's order and it's tied to a legitimate purpose, then yes. It doesn't have to be perfect. So you're talking about cases where there's scientific data, where it involves something for which there's scientific data, that says you can ignore the scientific data if there's some reason to think otherwise? I have not found such a case. And that's particularly telling for this case because courts have consistently held that states may require vaccination as a public health order. And the issue before the court today is an interlocutory appeal of a request for preliminary injunction. The facts on the ground have changed a bit since the trial on this. I presume at the hearing, one of the arguments that the state made was that the vaccinations were necessary to prevent community spread. I'm sure that was probably your primary argument. And I think since whenever that was, August, we've seen that regrettably even vaccinated people can transmit the Omicron variant very vigorously. So I guess we're stuck with the record that we have. But it seems to me that, you know, do we just ignore what science has shown since the preliminary injunction hearing about the efficacy of the vaccines? At this time, Your Honor, I believe so because we're here on an interlocutory appeal. We are stuck with the record that the district court had at that time because the standard is whether there was an erroneous conclusion of law or there was no rational basis in the evidence presented to the district court. You might consider what sort of record you would need before there's a permanent injunction. Correct. And it would seem to me scientific data is important. And if the problem is the reason there's not scientific data is because the government hasn't looked at it, then I'm not sure that would be a defense to say, well, we don't have data. Well, you could have gotten data. So it seems to me that that's really important. When you're two years into something, it's one standard when you're talking at the height of a pandemic when everybody's ignorant of what's going on. There's just no data. But two years out, I think the standard of reasonableness might require – I'm not talking about a heightened standard. The standard of reasonableness might require some data support. Understood, Your Honor. And, again, here we're on interlocutory appeal of just the request for preliminary injunction. And I see I'm almost out of time. May I conclude briefly? You are out of time. So, in conclusion, appellee's request that the court dismiss this case for lack of standing or alternatively affirm the district court's denial of the request for preliminary injunction. Thank you. Thank you, Counsel. Mr. Dunn, you had some rebuttal time still. Thank you, Your Honor. Your Honor mentioned the hearing on the TRO or the preliminary injunction. We didn't have a hearing. This was held without a hearing. All on the paper. This was just all on paper. I think that that might have made a difference. I would have loved to have had some development and had the opportunity to have Dr. Scrace from the state of New Mexico show up and answer some of these questions to get to Judge Hart's point about whether or not this is rational. We did argue that it didn't even satisfy a rational basis. The district court wasn't persuaded by those arguments. But I think what we're still talking about is whether or not there is a heightened level of scrutiny that the court should have applied. And that gets to Judge Hart's question about individuals with natural immunity that have had the disease and whether or not it's narrowly tailored to allow those folks to not get the vaccine when they don't need it. And I think that's a great example of why the Supreme Court, at the Supreme Court's decision in Planned Parenthood v. Casey, is important. And they do talk about a general bodily integrity. I'd like to read it just because it's so powerful of a statement, I think. Roe, however, may be seen not only as an exemplar of Griswold liberty, but as a rule, whether or not mistaken, of personal autonomy and bodily integrity with doctrinal affinity to cases recognizing the limits on governmental power to mandate medical treatment or to bar its rejection. That's precisely what we're talking about here. And that's exactly why the court should have applied a strict scrutiny to this case, or at a minimum, some sort of quasi-intermediate scrutiny. And that's all I have, Your Honors. Thank you, Counsel. We appreciate the argument. Your excuse in the case shall be submitted.